UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LOS ALTOS SCHOOL DISTRICT,<br><br>    Plaintiff,<br><br>v.<br><br>L. S.,<br><br>    Defendant. | Case No. 5:17-cv-07080-EJD<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Re: Dkt. No. 9 |

## I. INTRODUCTION

In this action under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., Plaintiff Los Altos School District (the "District") seeks judicial review of a decision by the California Office of Administrative Hearings (the "OAH"), which found that the District denied Defendant L.S. a free and appropriate public education for the second and third grades by failing to assess L.S. in all areas of suspected need and failing to offer L.S. a suitable educational placement and services. The OAH awarded compensation to the parents of L.S. in the form of reimbursement for private school tuition and the costs of tutoring, counseling and socialization programs. The District was ordered to make the payments within 30 days of September 15, 2017.

The District now moves for a temporary restraining order ("TRO") staying the order for payments and enjoining the California Department of Education ("CDE") from seeking enforcement during the pendency of this action. Dkt. No. 9. Defendant has filed an opposition to the motion pursuant to the court's instructions, and the court heard argument on the matter on January 18, 2018.

Federal jurisdiction arises under 28 U.S.C. § 1331. Having carefully considered the District's application within the legal framework applicable to requests for preliminary injunctive relief, the court finds the District has not adequately demonstrated an imminent likelihood of irreparable harm. As such, the court declines to issue a TRO at this time.

## II. LEGAL STANDARD

The standard for issuing a TRO is the same as that for the issuance of preliminary injunction. See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977). Thus, much like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008).

"To obtain a preliminary injunction, the moving party 'must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.'" Idaho v. Coeur D'Alene Tribe, 794 F.3d 1039, 1046 (9th Cir. 2015) (quoting Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1124 (9th Cir. 2014)).

Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). This articulation represents "one alternative on a continuum" under the "'sliding scale' approach to preliminary injunctions employed" by the Ninth Circuit. Id. at 1131-32. But "[t]he critical element in determining the test to be applied is the relative hardship to the parties." Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 315 (9th Cir. 1978). "If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." Id.

Whether to grant or deny a TRO or preliminary injunction is a matter within the court's

1  discretion. See Miss Universe, Inc. v. Flesher, 605 F.2d 1130, 1132-33 (9th Cir. 1979).

**III.  DISCUSSION**

Because irreparable harm is the "single most important prerequisite for the issuance of a [TRO]," the court addresses that element first. Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005). The analysis begins and ends there.

**A.  Governing Authority**

The type of irreparable harm that can justify injunctive relief has two critical aspects, both of which must be exhibited by the moving party.

First, the TRO application must convincingly explain why "irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22, 129 S.Ct. 365 (emphasis preserved). A TRO issued on something less than likelihood of harm, such as a possibility of harm, is "inconsistent" with the "characterization of injunctive relief as an extraordinary remedy . . . ." Id.

Second, irreparable harm must be imminent, particularly when, as here, the party to be enjoined is an arm of the state. Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1042 (9th Cir. 1999) ("The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way."). To that end, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." Caribbean Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis preserved). "Subjective apprehensions and unsupported predictions . . . are not sufficient to satisfy a plaintiff's burden of demonstrating an immediate threat of irreparable harm." Id. at 675-76.

In addition, the court is mindful that the purpose of preliminary injunctive relief "is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). It therefore follows that if a final decision on the merits can be achieved before any change to the parties' positions, a pretrial injunction is

unnecessary.

**B.     Application**

In an effort to establish irreparable harm, the District submits its communications with the CDE subsequent to the OAH's final decision. On November 7, 2017, the CDE sent an email notifying the District that evidence of its compliance with the OAH decision was due. Decl. of David R. Mishook, Dkt. No. 9, at Ex. D. The District responded by email the next day, indicating it was "in the process of deciding whether to appeal the underlying decision," that it would "seek a stay of corrective actions" if it filed an appeal, and that it would inform the CDE of its decision after the next governing board meeting. Id. To that, the CDE stated in an email dated November 9th that it expected the District to "follow the order, and submit the required evidence until any further actions, i.e. appeals, stays etc. happen." Id.

The CDE did not contact the District again until November 21st. In another email, the CDE inquired whether the District had taken any further action "such as appeals, etc." Id. On December 6th, the District replied by email and notified the CDE it had decided to appeal the OAH decision. Id. The District also stated it was "submitting paperwork to OAH stay [sic] the actions pending the appeal." Id. To that, the CDE responded on December 7th that "[t]he District is responsible to complete the requirements of the order as written and by the due date," and that "[t]he appeal to OAH does not waive the requirement of the current order." Id. No further communications between the District and the CDE were provided.

Relying on the CDE's emails, the District claims it is faced with two "prejudicial" choices. The District believes if it does not comply with the OAH order, it faces a "real and imminent risk" the CDE will declare the District out of compliance and impose a penalty, such as withholding state or federal funding. But if the District does comply by making the payments ordered by the OAH, it contends the potential for recoupment should it prevail in this action is legally and factually questionable.

While the court agrees the District is faced with options and appreciates its concern for

what could be "coming down the pipe," it cannot agree that the two "prejudicial" choices described above presently constitute irreparable harm that is both likely and imminent. On the issue of likelihood, the emails do not reveal anything about the CDE's intended course of action against the District. If anything, the emails merely demonstrate the CDE's interest in obtaining confirmation of the District's compliance with the OAH order and describe its position concerning the status of the District's obligations in the face of further proceedings. The District has similarly assessed the CDE's emails. Mem. of P. & A., Dkt. No. 9, at 10:18-20 ("Despite this appeal, CDE has contacted the District seeking proof of compliance with the OAH order and, further, has expressed its position . . . [about] the enforceability of the OAH decision."). It takes this characterization a step further, however, by implying the emails demonstrate a likelihood the CDE will act against the District. The court cannot also take that step based only speculations from the evidence.[1]

Nor do the emails suggest the imminence of injurious action. Again, the CDE has not revealed exactly what it intends to do if the District does not produce evidence of compliance with the OAH order, and certainly has not indicated it will take any action imminently. To the contrary, the fact the CDE has not sought to officially enforce the OAH order now two months after the compliance date is at least some indication it may be awaiting the outcome of these proceedings before escalating its efforts, despite its stated position on the effect of an appeal. In that way, the circumstances presented here are distinguishable from ones considered by the district court in Tamalpais Union High School District v. D.W., No. 16-cv-4350-HSG, 2016 WL 5791259, at *5 (N.D. Cal. Oct. 4, 2016) ("Tamalpais"). There, the TRO request came only after the defendant parents actively sought to obtain compliance with a favorable OAH order by filing a complaint against the plaintiff school district with the CDE, and the CDE in turn sought

---

[1] At the hearing, the District produced a letter from the CDE dated November 3, 2017, it characterizes as a "corrective action" notice. The letter reflects the same basic information outlined in the OAH order and the CDE's emails to the District. Notably, it notably does not supply further information about the CDE's enforcement intentions.

Case No.: 5:17-cv-07080-EJD
ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE
5

confirmation of compliance from the school district. That factual context is better evidence that enforcement proceedings are at the very least likely and perhaps imminent. But similar conduct by Defendant's parents and the CDE are not described here.

In any event, the regulation governing enforcement actions does not authorize the CDE to immediately withhold funding for a failure to carry out an order of the OAH. Instead, the regulation requires the CDE to first determine "that compliance cannot be secured by other means." Cal. Code Regs. tit. 5, § 4670. There is no evidence the CDE has made that threshold determination. Moreover, the District's counsel acknowledged at the hearing that the CDE would afford it a pre-deprivation process before implementing a sanction, and nothing in the present application convincingly describes how the District would be irreparably harmed even if that process was initiated in the near future.

Thus, the District has only shown a *possibility* of harm or a *possibility* it may need to choose between two options it finds "prejudicial." That is not enough for extraordinary injunctive relief, particularly when the court intends to expedite the final resolution of these proceedings to the extent possible. See Winter, 555 U.S. at 22, 129 S.Ct. 365 (rejecting a "possibility" standard in the context of injunctive relief as "too lenient"). And because the District's motion fails on the issue imminent irreparable harm, the court need not address the other factors. See Leiva-Perez v. Holder, 640 F.3d 962, 965 (9th Cir. 2011) (holding that injunctive relief may not issue absent a "threshold showing regarding irreparable harm . . . regardless of the petitioner's proof regarding the other [ ] factors"); see also Blackburn v. State Dep't of Soc. & Health Servs., 472 Fed. Appx. 569, 570-71 (9th Cir. 2012).[2]

---

[2] The District alternatively supports this application by arguing that compensatory orders are, or at least should be, automatically stayed when review is sought under the IDEA. The argument was rejected in Tamalpais. 2016 WL 5791259, at *6-8. The court adopts that same reasoning here and also rejects the District's argument, concurring with the Tamalpais court that "if Congress meant to provide that underlying administrative decisions are automatically stayed and unenforceable pending appeal, it could say so expressly." 2016 WL 5791259, at *7.

Case No.: 5:17-cv-07080-EJD
ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE
6

**IV. ORDER**

The Motion for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue (Dkt. No. 9) is DENIED. As stated at the hearing, this decision is without prejudice to subsequent applications for preliminary injunctive relief based on further developments.

The Case Management Conference currently scheduled for March 15, 2018, is ADVANCED to 10:00 a.m. on February 8, 2018. The parties shall file a Joint Case Management Conference Statement on or before February 1, 2018.

**IT IS SO ORDERED.**

Dated: January 18, 2018

EDWARD J. DAVILA
United States District Judge